**FOX et al. v. CITY OF PASADENA.***
No. 7672.

Circuit Court of Appeals, Ninth Circuit.
Aug. 26, 1935.

*Rehearing denied Oct. 21, 1935.

Roscoe R. Hess, of Los Angeles, Cal., for appellants.

Harold P. Huls, City Atty., and John W. Holmes, Deputy City Atty., both of Pasadena, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

Plaintiffs, who were nonresidents of California, filed a bill in equity against the city of Pasadena, a municipal corporation of the state of California, hereinafter called the "City," on behalf of themselves and all other nonresident taxpayers within Municipal Improvement District No. 3 in the City of Pasadena. The defendant moved to dismiss the action upon several grounds; among others, upon the ground that the facts stated in the bill of complaint did not constitute a

cause of action, and also because such facts showed laches. The court granted the motion on the ground of laches. The appeal is taken from the decree of dismissal.

The bill of complaint occupies 62 pages of the printed transcript. The appellants allege that the City and its officers have misapplied funds derived from the sale of bonds of the municipal improvement district. The purpose sought to be accomplished by this suit, as evidenced by the prayer of the complaint, is to have the court direct the officers of the City to pay into the sinking, or interest and redemption fund established by law for the payment of bonds of the district, various sums of money alleged to have been improperly expended by the officers of the City in connection with the construction of the improvements within said Municipal Improvement District No. 3, for which the bonds were issued. Included in the money sought to be thus transferred from the funds of the City are certain sums collected by the City on the official bonds of some of the city officials who were guilty of the misappropriation of said funds.

The municipal improvement district in question has no corporate entity. It is simply a district defined by the city authorities of Pasadena as the district to be subjected to the cost of certain improvements therein. The money for the improvement was derived from the sale of bonds issued by the City. The bonds were to be paid by levying taxes upon the property within the district to meet the interest and installments of principal as they came due. The complaint alleges that the burden upon the taxpayers owning real estate within the district has been increased by reason of the malfeasance of the City and its officers. The allegation of the complaint is that these wrongs were committed by the City, through its officers, in that the officers failed to comply with the law in regard to the expenditures for the improvements.

When this case came on for argument, it was suggested to counsel that the action was in effect one in mandamus and that the federal courts had no power in original proceedings to issue writs of mandamus. See Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60; McIntire v. Wood, 7 Cranch, 504, 3 L. Ed. 420; Heine v. Board of Levee Com'rs, 19 Wall. (86 U. S.) 655, 22 L. Ed. 223; Greene County v. Daniel, 102 U. S. 187, 26 L. Ed. 99; North Carolina Public Service Co. v. Southern Power Co. (C. C. A.) 282 F. 837. Supplementary briefs were filed in pursuance of the suggestion of the court and the City now takes the position that the proceedings, in effect, is one in mandamus as to which the district court had no jurisdiction. In determining this jurisdictional question it is necessary to divide the many claims of the plaintiffs-appellants into separate groups or classifications and examine these groups separately.

The claims in the complaint may be divided into four distinct classifications: The first, dealing with the alleged responsibility of the City for the torts of its officers in misapplying the funds derived from the sale of bonds; the second, which is like unto it, dealing with unauthorized expenditures made for the improvement of what is alleged to be private property; the third, dealing with money, $2,900.20, which has been paid into the treasury of the City by the bondsmen of the officers who were guilty of misapplying the funds of the district, and which has been withheld from the contractor on account of failure to properly perform the work. This latter amount, $13,213.01, is now involved in litigation between the contractor and the City. The fourth, dealing with the duty of the City to reimburse the funds of the district for expenditures made from the funds of the district for street crossing improvements for which it is alleged that the City itself is liable.

 With reference to the first two classifications, it is well settled in California that a city is not liable for the misconduct of its officials when acting in a governmental capacity. Wallner v. Barry, 207 Cal. 465, 472, 279 P. 148; Kellar v. City of Los Angeles, 179 Cal. 605, 178 P. 505; Municipal Bond Co. v. City of Riverside, 138 Cal. App. 267, 32 P.(2d) 661. The wrongs complained of were committed by the officials of the City and not by the City itself. No cause of action is stated against the City by showing that its officers were guilty of misconduct. It would certainly be a novel proposition for the taxpayers of the City to sue the City to recover a judgment against the City for the amounts that have been embezzled or misappropriated by a public

official from the funds of the City. In California a taxpayer of a city may enjoin a misapplication of its funds (Code Civ. Proc. Cal. § 526a) before the illegal expenditure is made, or may sue the officers guilty of misapplication to recover such sums on behalf of the municipality (Mines v. Del Valle, 201 Cal. 273, 257 P. 530; Crowe v. Boyle, 184 Cal. 117, 193 P. 111; Osburn v. Stone, 170 Cal. 480, 150 P. 367) but cannot sue the city for such misapplication.

With reference to the third classification the complaint seeks a transfer of funds derived from the bondsmen of the officials who misapplied the funds of the district. It is apparently conceded that a part of these amounts were collected because of such misapplication and a part for other misconduct relating to other funds of the City, and that an appropriate proportion of such amount, $2,900.20, should be credited to the fund of the district. The other amount is in litigation in the state courts. If there are funds in the treasury of the City which are carried on the books of the City in its general fund which should be applied to the account of the district, it is clear that proper officers in charge of the funds and books of the City, the legislative body of the City (see section 11½ of the Municipal Improvement Act of 1915; Cal. Stats. 1915, p. 99, amended 1925, § 11½, Cal. Stats. 1925, p. 181; Cal. Stats. 1931, p. 1908), the treasurer, and auditor, should make the transfer for such funds to the credit of the Improvement District, and this duty if neglected can be enforced only by mandamus, but not in the federal court.

With reference to the fourth classification it is clear that the remedy sought is the transfer of funds in the city treasury from the general fund to the district fund in payment of the implied obligation of the City to reimburse the district. However, there is no allegation that there is any money in the general fund of the City which is properly applicable to such claims or which could be lawfully transferred to the account of the Improvement District. See note below.[1]

To attempt to enforce such transfer by first procuring a judgment against the City is a mere subterfuge for invoking federal jurisdiction. It is in effect an attempt to secure a judgment in behalf of the City against itself for the taxpayers in the district are seeking to enforce the rights of the City as trustee of the funds of the district against the City as trustee for the funds of the taxpayers of the City. In this roundabout way it is sought to compel the officers of the City to perform their duty under the statutes of the state and under the charter of the City which regulates those duties. This is the function of a writ of mandamus over which the District Court has no jurisdiction.

We conclude as to the first two classifications of claims growing out of the misconduct of public officials of the City that no cause of action is stated against the City. As to the third and fourth classifications the purpose sought to be achieved is a transfer of funds for which the remedy is by mandamus. The District Court has no jurisdiction to issue such a writ to accomplish such a result. The basic error in the complaint is the assumption that the City is trustee for the taxpayers of the district. The fact is that the officers of the City act ex officio for and on behalf of the district. They, not the City, are the trustees named by the statute.

Decree affirmed as to classifications No. 1 and No. 2 on the merits, and as to classifications No. 3 and No. 4 for lack of jurisdiction.

---

[1] The Constitution of California, art. 11, § 18, prohibits the incurring of any debt or liability by any city in any manner or for any purpose exceeding in any year the income and revenue provided for the year without the consent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose. See San Francisco Gas Co. v. Brickwedel, 62 Cal. 641; W. W. Montague & Co. v. English, 119 Cal. 225, 51 P. 327; Bradford v. City and County of San Francisco, 112 Cal. 537, 44 P. 912; Buck v. City of Eureka, 124 Cal. 61, 56 P. 612; Arthur v. City of Petaluma, 175 Cal. 216, 165 P. 698; Chester v. Carmichael, 187 Cal. 287, 201 P. 925; City and County of San Francisco v. Boyle, 195 Cal. 426, 233 P. 965. It was thought necessary to amend the Constitution of California to permit a similar reimbursement of funds to that claimed here, where the revenues of the year had been exhausted. See Const. of Cal. art. 11, § 18½, adopted Nov. 5, 1918.