Mollie Mae **DALLAS**, Appellant,

v.

**CITY OF ST. LOUIS**, a municipal corporation, Respondent.

No. 47679.

Supreme Court of Missouri,

Division No. 2.

July 11, 1960.

Motion for Rehearing or to Modify Opinion Denied Sept. 22, 1960.

Gerwitz & Seegers, Gerald L. Seegers, St. Louis, for appellant.

Thomas J. Neenan, City Counselor, Alvin J. McFarland, Associate City Counselor, William M. Austin, Asst. City Counselor, St. Louis, for respondent.

NICK T. CAVE, Special Commissioner.

Plaintiff, in her petition, sought to recover $25,000 damages from the city for the wrongful death of her husband. Defendant filed a motion to dismiss the petition because it did not state a claim upon which relief could be granted. The motion was sustained and judgment of dismissal entered. Plaintiff appealed. The amount involved exceeds $15,000, and this court has jurisdiction. Section 3, Article V, Constitution, 1945, V.A.M.S.

The petition alleges that the defendant is a city of the first class; that plaintiff is the widow of James O. Dallas; that he died on February 13, 1958, as the direct and proximate result of injuries received because of the carelessness and negligence of the defendant, its agents, servants and employees; that Dallas had been employed by the city as a motor vehicle mechanic "in the City Refuse Division Garage * * * *wherein the city* * * * operates a garage for the servicing and maintenance of motor vehicles owned and operated by the city*; * * * that at the time the said James O. Dallas received the injuries resulting in his death he was engaged in working upon and servicing a *garbage* and *refuse pick-up* truck, and was so engaged at the express direction and by instruction from one Jesse Murphy, the shop foreman of said garage, who was * * * a servant and employee of defendant, * * *; that in the operation of said *service and maintenance garage* the defendant city was engaged in a proprietary activity and was not then and there performing a governmental function. * * *" (Italics ours.)

The petition then alleges several acts of specific negligence of the city employees working in the garage. We need not set out such allegations because it is not claimed, on appeal, that they are insufficient.

The sole question presented is whether, under the facts pleaded in the petition, the city was acting in its governmental or in its corporate capacity in the establishment and operation of the *garage*.

The parties agree it is the settled law of Missouri that the collection of garbage by a city is a governmental function; and that the city is not liable for the negligence of employees when so engaged. Behrmann v. City of St. Louis, 273 Mo. 578, 201 S.W. 547; Hayes v. City of Kansas City, 362 Mo. 368, 241 S.W.2d 888. It is also agreed that the rule of municipal immunity for torts arising out of the performance of a governmental function applies in cases where the injured person is a municipal employee, as well as where the injured person is a member of the general public. Watrous v. City of St. Louis, Mo. App., 281 S.W.2d 594.

The controversy over the imposition of tort liability on a municipality has been hotly discussed for a long time. Many writers, and some courts, have criticized the principle that, for the purpose of determining tort liability of a municipality, there should be a distinction made between governmental and corporate functions. However, this distinction is so deeply ingrained in Missouri law, despite the criticisms (Hiltner v. Kansas City, Mo., 293 S.W.2d 422,

435), that we will not discuss the suggested reasons for a complete abandonment; or undertake the impossible task of reconciling the cases. But we will keep in mind that the modern tendency is to restrict rather than to extend the area of immunity. 60 A.L.R.2d 1198; 38 Am.Jur., Sec. 573, page 266.

It is easy to state the general rule that a city is not liable for torts arising out of the performance of governmental functions, but is liable if the tort arises out of the performance of its proprietary or corporate functions. The great difficulty is in the application of the rule to particular facts.

In the instant case, the petition alleges that the city owned and operated, through city employees, a garage for the purpose of repairing and maintaining *city owned motor vehicles*; and that such employees had been negligent in certain respects in the operation of the garage. In its brief, the city asserts that the plaintiff admits, in her brief, that the garage is used solely for *servicing garbage trucks*. We find no such admission. Plaintiff's brief, as well as her petition, states that at the time of the injury deceased was repairing a garbage truck, but this is not equivalent to an admission that the garage was used *solely* for such purpose. We must dispose of this appeal on the allegation that the city owned and operated the garage for the maintenance and repair of *city owned motor vehicles* whether used in the performance of a governmental or proprietary function.

In determining if a petition states a claim upon which relief may be granted, the averments of the petition are to be given a liberal construction, and they should be accorded their reasonable and fair intendment. Fair implication should be indulged from the facts stated. So considered, a petition should be held sufficient if its factual averments invoke substantive principles of law which entitle the plaintiff to relief. Zuber v. Clarkson Construction

Co., 363 Mo. 352, 355, 251 S.W.2d 52, 54; Hiltner v. Kansas City, Mo., 293 S.W.2d 422, 424.

It is true the deceased, at the time of his injury, was repairing a *garbage truck* which was used by the city in the performance of a governmental function, and we will discuss later, whether that fact is of importance in determining the fundamental issue of whether the operation of the *garage* was a governmental function.

The precise question presented has not been passed on by Missouri courts, but has been decided in other jurisdictions.

In 26 A.L.R.2d 944, under the caption "Operation of garage for maintenance and repair of municipal vehicles as governmental function," is digested opinions of the states that have ruled the question. From a consideration of these cases, the author concludes: "It has been quite generally held in the cases which have arisen that the *operation of a garage* for the repair and maintenance of municipal vehicles is, *regardless of the function the vehicles themselves may be engaged in,* a proprietary or corporate function, such as will render the municipal corporation liable for injuries resulting from the negligent operation, maintenance, or repair of vehicles by the employees of the *garage*." (Italics ours.)

This general rule is announced, without criticism, in Yokley, Municipal Corporations, Vol. 3, Sec. 464; and Antieau, Municipal Corporation Law, Vol. 2, Sec. 11.06, page 19. There are no cases cited to the contrary.

Under this rule, the fact that the deceased, at the time of his injury, was repairing a garbage truck would be of no moment in determining the question whether the operation of the garage was a governmental function.

In Oklahoma City v. Foster, 118 Okl. 120, 247 P. 80, 47 A.L.R. 822, the city had established a garage adjacent to the police

station for the maintenance and repair of the cars and motorcycles used by the police department. A police motorcycle had been sent to the garage for repair of the brakes; the employees failed to do so; and the next day a police officer was thrown from the vehicle and injured because of the defective brakes. The city contended that the operation of the police department was a governmental function, which was conceded, and that the establishment of the garage for the repair of police vehicles was a necessary element of that function and therefore governmental. After reviewing several authorities, the court said (118 Okl. 120, 247 P. 83, 47 A.L.R. 827): "The establishment by the defendant of a garage for the repair of the city's motor vehicles was in no manner governmental in its character, but was wholly corporate. It was in no manner a police regulation made and enforced in the interests of the public, any more than was the duty to keep a street in condition suitable for ordinary travel, * * *. [118 Okl. 120, 247 P. 84, 47 A.L.R. 829] * * * it will be conceded the defendant, in determining the kind, character, capacity, etc., of the motor vehicles it would require for the police department, was acting in its legislative or governmental capacity; but, when it operated the garage for the maintenance and repair of the vehicles, and placed in charge thereof the chief of police, and vested him with power to determine when, how, and what repairs were to be made, the defendant was acting in its corporate and ministerial capacity, * * *." The court quoted with approval from Levin v. City of Omaha, 102 Neb. 328, 167 N.W. 214, 215, wherein the court said: "We have generally held that, when a municipal corporation engages in such business [repairing its automotive cars], its responsibilities and liabilities are the same as are those of private corporations or individuals in the conduct of such an enterprise."

In the recent case of City of Tulsa v. Hodge, Okl., 293 P.2d 344; and City of Tulsa v. Washington, 206 Okl. 61, 241 P.2d 194, the court reaffirmed its holding in the Foster case.

In City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010, 26 A.L.R.2d 935, the Supreme Court of Texas goes further than is necessary in the instant case. In that case, the city operated, through its employees, a garage for the repairing and maintenance of its trucks *used exclusively* by the Garbage Department for the collection of garbage. The jury found that the city was negligent in the operation of the *garage* in failing to inspect and repair defective brakes on one of the garbage trucks. The truck was being operated on the streets of the city and collided with plaintiff's automobile. On appeal, the city contended that the operation of the garage was but a necessary element to its garbage collection, which is a governmental function, and being such, the city is not liable for the negligence of its employees in the performance of this function. After reviewing many authorities, the majority opinion said (150 Tex. 387, 240 S.W.2d 1012, 26 A.L.R. 940): "The city is free to use whatever means it shall choose in the collection of garbage and in the repair and maintenance of the vehicles so used. The City of Houston chose to repair the trucks itself for its own benefit and convenience. This saving of time and money could not possibly inure to the benefit of the general public as distinguished from those within its corporate limits"; and held that the maintenance of the garage was not a governmental function. Four members of the court joined in a strong dissent and held (150 Tex. 387, 240 S.W.2d 1014, 26 A.L.R. 942): "It is very apparent from the foregoing undisputed facts that the operation of the garage is a part of the city's gathering and disposal of garbage. It is as certainly a part of the performance of that function as is the driving of the trucks. The garage is used and operated to keep the trucks running and the garbage moving." However, the dissenting opinion did say, "Had the garage been maintained and used for the repairing of all motor vehicles owned by the city and used for what-

ever purpose, a somewhat different question would be presented, * * *." That is the situation in the instant case.

For other authorities following the doctrine of the Foster case, see Bertiz v. City of Los Angeles, 74 Cal.App. 792, 241 P. 921; and Bathke v. Traverse City, 308 Mich. 1, 13 N.W.2d 184.

In support of its contention that the petition shows on its face that the city was performing a governmental function, the defendant cites: Hiltner v. Kansas City, Mo., 293 S.W.2d 422; Watrous v. City of St. Louis, Mo.App., 281 S.W.2d 594; Lober v. Kansas City, Mo., 74 S.W.2d 815; Blackburn v. City of St. Louis, 343 Mo. 301, 121 S.W.2d 727; Hayes v. City of Kansas City, 362 Mo. 368, 241 S.W.2d 888.

In the Hiltner and Blackburn cases, the city had constructed a device in the street for the purpose of regulating traffic. It was held that the regulation of traffic was a governmental function and that the city was not liable for the negligent maintenance of the *device*. These two opinions would be controlling in the instant case if plaintiff sought to recover for the negligent maintenance or operation of the garbage truck, but that is not her claim. It is the negligent operation of the *garage* of which she complains.

In Hayes v. City of Kansas City, plaintiff, sued to recover for personal injuries suffered as the result of the negligent operation of a city truck engaged in removing garbage and other refuse from an alley. It was held that such work was governmental, and that the city was not liable. This case is not controlling for the same reason assigned above.

In Lober v. Kansas City, the issue concerned the alleged negligent operation of a fire hydrant used *exclusively* for fighting fires and cleaning city streets. The court recognized that where a city owns and operates a water system for the dual purpose of supplying its inhabitants with water for revenue, a proprietary purpose, and also for the extinguishment of fires and for keeping the city sanitary and healthful, a governmental function, then it is the duty of the city to keep the same as a whole in repair and free from danger to others. But in disposing of the specific issue, the court said (74 S.W.2d 823): "In the present case the evidence shows that the fire hydrant in question was used solely for two purposes, extinguishing fires by the fire department and the cleaning of the streets by the street cleaning department, both of which, under the decisions of this court, are governmental purposes. Also the particular negligent act which caused the water to burst forth from the hydrant in question to plaintiffs' damage on this occasion was the negligent act of an employee in the street cleaning department as a part of his work in using this hydrant in flushing and cleaning the city streets. The damage sued for arose directly from the exercise by the city of one of its governmental functions by the negligent act of a governmental employee in the performance of a governmental duty, * * *"; and held that the city was entitled to an instruction submitting that issue to the jury. Here, again, it was the negligent operation of the *device* used solely for the performance of a governmental function that the court applied the rule.

In Watrous v. City of St. Louis, the plaintiff was an employee of a hospital owned and operated by the city. The petition alleged that the city was negligent in failing to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work, and reasonably safe tools with which to perform his duties, and as a result, he fell into an incinerator and was injured. The court sustained the city's motion to dismiss the petition upon the basis that the city was not liable for negligence in the performance of a governmental function—the operation of the hospital. On appeal, plaintiff contended that the doctrine of municipal immunity does not apply in a suit brought by an employee of a municipality. The St. Louis Court of

Appeals correctly held to the contrary. But that is not the issue in the present case. Again, the alleged negligence related to the operation of the *device* used by the city in the performance of a governmental function.

We are of the opinion that the authorities cited by the city are not controlling of the issue made by the allegations of the petition in the instant case.

■■ The limits of municipal immunity for its torts under the governmental doctrine should be confined within reasonable bounds. No court has yet dared to define an exact rule or measuring stick fixing such limits, except where the doctrine has been abandoned altogether. The generally accepted test is whether the act performed is for the common good of all, or whether it is for the special benefit or profit of the corporate entity. Krueger v. Board of Education, 310 Mo. 239, 274 S.W. 811, 814, 40 A.L.R. 1086. In 38 Am.Jur., Section 574, page 267, it is said: "It has been variously stated that a governmental duty is one which involves the exercise of governmental power, and is assumed for the exclusive benefit of the public; that a function of a municipality is governmental when it is assumed for all the people in the community; * * *. A municipality cannot escape responsibility for the careful performance of a duty which is substantially one of a local or corporate nature because it may in some general way also relate to a function of the government, or although it may inure incidentally to the advantage of the public."

■ With these general tests in mind, and giving due consideration to decisions of other jurisdictions, we are of the opinion that, when the city elected to own and operate a garage for the maintenance and repair of its motor vehicles, it entered the area of proprietary functions, and not governmental, and may be liable for the negligence of its employees in the operation of the garage. The factual question of whether there was such negligence is not before us. It follows that the judgment should be reversed and the cause remanded. The special commissioner so recommends.

PER CURIAM.

The foregoing opinion by NICK T. CAVE, Special Commissioner, is adopted as the opinion of the court.

All concur.